IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-02080-REB-KLM

SPACECON SPECIALITY CONTRACTORS, LLC,

    Plaintiff,

v.

RICHARD BENSINGER, an individual,

    Defendant.
_____

## ORDER ON MOTIONS TO QUASH
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on the Department of Human Services, Division of Child Support Enforcement ("DCSE")'s **Motion to Quash Subpoena** [Docket No. 49; Filed April 23, 2010], and the Colorado Department of Labor and Employment ("DOL")'s **Motion to Quash Subpoena or, in the Alternative, Motion for In Camera Review of the Records** [Docket No. 54; Filed May 10, 2010]. I have reviewed the Motions, Defendant's responses to the Motions [Docket No. 56 & 67], and DCSE's reply in support of its Motion, the applicable law, and am fully advised in the premises. For the reasons stated below, the DCSE's Motion to Quash is **GRANTED** and DOL's Motion to Quash is **DENIED**.

### I.  Background

This is a defamation action brought by Plaintiff Spacecon Specialty Contractors, LLC ("Spacecon"), a construction contractor. *Complaint* [#1] at ¶ 2. This action arises from a film titled *Looking the Other Way: Benefitting from Misery* (the "Film"), directed and produced by Defendant Richard Bensinger in 2008 or early 2009. *Id.* at ¶ 10. The Film is

1

a documentary alleging that Plaintiff committed a number of illegal labor practices. *Id.* at ¶ 21.

Plaintiff alleges that on March 12, 2009, Defendant held an invitation-only pre-release screening of the Film for government construction oversight officials, owners of construction projects, and managers of general construction companies. *Id.* at ¶¶ 13, 16. An advertising poster for the Film was posted in public areas. The poster described human trafficking, tax evasion, and insurance fraud involving the exploitation of immigrant workers. *Id.* Plaintiff alleges that the Film identifies Spacecon as the construction firm engaging in this conduct. *Id.* at ¶ 22. Individuals in the Film alleged that Plaintiff exploited and abused Mexican laborers who were illegally brought to the United States by "labor brokers." *Id.* at ¶¶ 25, 26. The Film describes inhumane living conditions, the absence of medical treatment and Spacecon's wage payment practices. *Id.* at ¶¶ 25-27. According to Plaintiff, the Film alleges that Spacecon exploits its cheap labor by overworking them and avoids paying employment taxes by labeling them as independent contractors. *Id.* at ¶ 27.

Before the screening of the Film, Defendant sent a list of questions to Plaintiff regarding Spacecon's labor practices. *Id.* at ¶ 31. Plaintiff alleges that the answers to the questions notified Defendant that the claims in the Film were untrue. *Id.* at ¶ 32. As such, Plaintiff asserts that Defendant's statements that Spacecon engages in unlawful, unethical and abusive employment practices were made with notice that they were untrue. *Id.* at ¶ 34. Spacecon alleges that the defamation is ongoing because Defendant continues to show the Film. *Id.* at ¶ 35.

## II. Analysis

**A. DCSE Subpoena**

On March 29, 2010, Defendant issued a subpoena to the Colorado State Directory of New Hires ("SDNH"). *Motion* [#49] Ex. A.[1] SDNH is a "confidential and secure repository responsible for receiving new hire data reported by employers in the State of Colorado" [Docket No. 57-1, Ex. C]. *See also* http://www.newhire.state.co.us. Pursuant to federal law, an employer must furnish this data to SDNH for the state where the hired employee works. 42 U.S.C. § 653A(b)(1)(A). SDNH was created in order to locate newly hired individuals for the purpose of "establishing], enforcing, or modifying child support obligations . . ." Colo. Rev. Stat. § 26-13-125(2). The statute also provides that the information compiled by SDNH shall be available to certain state agencies for the purposes of "establishing or verifying eligibility or benefit amounts . . . " Colo. Rev. Stat. § 26-13-125(8)(b). The subpoena requests (1) copies of any files relating to Spacecon; (2) documentation and communications relating to submission of information by Spacecon to SDNH or to the Family Support Registry; (3) any communications or correspondence from SDNH or the Family Support Registry; and (4) all documents in any form relating to Spacecon or its workers.

DCSE moves to quash the subpoena on the grounds that the information compiled in SDNH is "confidential," "privileged," and subject to executive privilege.[2] The agency

---

[1] DCSE is responsible for overseeing SDNH. *Id.* Ex. B.

[2] In its Reply, for the first time, DCSE asserts that the documents requested in the subpoena are subject to executive privilege. [# 66]. The Court need not consider arguments made for the first time in a reply brief. *Jackson v. Potter*, 587 F. Supp. 2d 1179, 1183 n.3 (D. Colo. 2008). Allowing a party to raise an issue in a reply brief, "would prevent the responding party from presenting a counter-argument and force the Court to decide a[n] . . . issue without the benefit of the opposing perspective." *Alcohol Monitoring Systems, Inc. v. Actsoft, Inc.*, 682 F.Supp.2d 1237, 1242 (D. Colo. 2010). For these reasons, I decline to consider the executive privilege issue.

asserts that disclosure of the information would violate state and federal statutes. DCSE also asserts that full compliance with the subpoena would create an "undue burden" on it.

**B.    Department of Labor and Employment Subpoena**

Defendant also subpoenaed the DOL. The subpoena requests the following: (1) files and communications related to Spacecon; (2) documentation and communications of any worker-related claim; (3) complete copies of files relating to claims involving wage and hour complaints, demand for wages, requests for mediation, and worker's compensation against Spacecon; (4) all documents relating to communications between DOL and Spacecon or any person who submitted a claim; and (5) all documents relating to Spacecon or its workers in any form. *Motion* [#54] Ex. A. DOL moves to quash the subpoena on the ground that the information requested by Defendant is "confidential" under Colorado law and should not be disclosed.[3]

**C.    Relevance**

The DOL and DCSE are not parties to this case. Fed. R. Civ. P. 45 governs discovery from non-parties by subpoena. Rule 45 requires that the recipient of a subpoena timely file a motion to quash or modify the subpoena if it (1) fails to allow a reasonable time to comply, (2) requires disclosure of privileged or other protected matter, or (3) subjects a person to undue burden. *See* Fed. R. Civ. P. 45(c)(3)(A). The objecting party has the burden of showing that the discovery requested is objectionable. *Klesch & Co. v. Liberty Media Corp.,* 217 F.R.D. 517, 524 (D. Colo. 2003).

Neither of the subpoenaed state agencies has asserted that the records sought by

---

[3] DOL asserts an alternative remedy, an *in camera* review. If the Court orders that the documents must be disclosed, DOL requests that they be treated as "Highly Confidential" within the meaning of the Stipulated Protective Order [#39].

Defendant are not relevant.  Pursuant to Fed. R. Civ. P. 26(b), parties are entitled to discovery on any matter "relevant to the subject matter involved in the pending action." Relevance under Rule 26 is extremely broad.  *Echostar Commc'ns Corp. v. News Corp. Ltd.,* 180 F.R.D. 391, 394 (D. Colo. 1998).  Information is relevant if it is "reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).

"When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure."  *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 356 (D. Colo. 2004) (citations omitted); *see also Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 685 (D. Kan. 1991) (stating that a party resisting discovery based on relevance grounds bears the burden of explaining how "each discovery request is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, or burdensome").  Further, the objecting party cannot "sustain this burden with boilerplate claims that the requested discovery is oppressive, burdensome or harassing." *Id.* (citation omitted).  However, when a request for discovery is overly broad on its face or when relevance is not readily apparent, the party seeking the discovery has the burden to show the relevance of the request.  *See Paradigm Alliance, Inc. v. Celeritas Tech., LLC,* 2008 WL 678700, at *2 (D. Kan. Mar. 7, 2008) (unpublished decision) (citation omitted).

Defendant must satisfy a burden of proof heavier than the ordinary burden imposed by Rule 26, as the subpoenas here relate to non-parties.  *See Echostar Commc'ns Corp.*,

5

180 F.R.D. at 394. The fact that discovery is sought from a non-party is one factor the Court may weigh in determining whether Defendant is entitled to enforcement of the subpoena. *Id.* (citing *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993)). Courts are required to balance the need for discovery against the burden imposed when parties are ordered to produce information or materials, and the status of a person or entity as a non-party is a factor which weighs against disclosure. *Id.* (citing *American Standard Inc. v. Pfizer, Inc.*, 828 F.2d 734, 738 (Fed. Cir. 1987)).

### 1. DOL Subpoena

Defendant asserts that the material requested from DOL is evidence of alleged mistreatment of employees as well as Plaintiff's responses to employee complaints. According to Defendant, the Film makes assertions about Plaintiff's treatment of its employees. The Film asserts that Plaintiff employed illegal immigrants and exploited them because of their powerless condition. In the Film, workers claimed they were not properly paid wages or injury claims, and that they were not provided with workers' compensation insurance coverage. Moreover, the workers stated that they were terminated when they complained about these conditions. Defendant asserts that the DOL records may substantiate the allegations made in the Film.

Defendant correctly observes that under Colorado law, substantial truth is a defense to a defamation claim. *Bustos v. United States*, 257 F.R.D. 617, 622 (D. Colo. 2009) (citing *Anderson v. Cramlet*, 789 F.2d 840, 843 (10th Cir. 1986)); *see also Gordon v. Boyles*, 99 P.3d 75, 81 (Colo. App. 2004). As such, Defendant is entitled to discovery that may demonstrate that the accusations made in the Film are true. The documents sought from the DOL are plainly relevant, and the Court so concludes.

**2. SDNH Subpoena**

The subpoena directed to SDNH requests new hire information, including names, social security numbers, dates of hiring, and communications and documents related to Spacecon. Pursuant to Colorado law, the data sought by Defendant must be provided to SDNH by employers like Plaintiff. The database is used to identify mismatches between new employees' names and their alleged social security numbers. Defendant asserts that it is well-known that undocumented workers use false names and social security numbers. Defendant asserts that the data may potentially show that Spacecon employed illegal immigrants. *Opposition* [#56] at 3-4.

Defendant has not identified what evidence was cited in the Film to bolster its allegations against Plaintiff. In the Complaint, Plaintiff alleges that individuals appear in the Film who assert that Spacecon used illegal labor brokers. According to these individuals, Spacecon wrongly classifies its employees as independent contractors in order to evade employment taxes, denies workers' compensation insurance, and abuses its workers. *Complaint* [#1] at ¶ 26-27. In addition, in the Film individuals who are identified as Mexican immigrants describe how they were exploited and abused when they came to the United States to work and were deprived of pay and benefits and subjected to inhumane conditions. *Id.* at ¶ 25.

Evidence that Plaintiff employed workers whose social security numbers were inaccurate is only conditionally relevant to Defendant's defense of truth. Such evidence could lead to the discovery of admissible evidence if it generates a provable link to Plaintiff's alleged employment of illegal immigrants. But not every inaccurate social security

7

number is linked to an illegal immigrant.[4]  At this juncture, whether the link will be forged remains unknown.  Nevertheless, because Rule 26 defines relevant information as that "reasonably calculated to lead to the discovery of admissible evidence," the SDNH subpoena is not objectionable on relevance grounds.

**D.   Confidentiality/ Privilege**

DCSE asserts that the requested records are "privileged by statute and protected from discovery."  *Motion* [# 49] at 3.  The Colorado Child Support Enforcement Act states that in the collection and dissemination of data it is "important to prevent abuses of information and to safeguard the fundamental right of individuals to privacy."  Colo. Rev. Stat. § 26-13-102.7(1).  That statute also provides that the child support enforcement agency must make every effort "to preserve the integrity and confidentiality" of its records.  Colo. Rev. Stat. § 26-13-102.7(2).[5]

DOL essentially offers the same argument.  The agency asserts that unemployment records, workers' compensation documents, and wage claim records are confidential under Colorado's labor statutes.  However, DOL has not raised a privilege issue.

Discovery in federal court is governed by the Federal Rules of Civil Procedure, regardless of whether federal jurisdiction is based on federal question or diversity of citizenship.  *See Everitt v. Brezzel*, 750 F.Supp. 1063, 1065 (D. Colo. 1990).  A party may not obtain discovery of privileged information or documents, even if it is relevant.  Fed. R. Civ. P. 26(b)(1).  Because evidentiary privileges "contravene the fundamental principle that

---

[4]  *See, e.g.*, David Migoya, *Which Number Are You?*, The Denver Post, Sept. 30, 2010, at A1.

[5] The federal statutes cited by SDNH, 42 U.S.C. § 653 and 42 U.S.C. § 303.21, do not prohibit the disclosure of this confidential information in civil litigation.

the public has a right to every man's evidence," they must be strictly construed and accepted only to the extent that they promote sufficiently important interests that outweigh the need for probative evidence. *See Trammel v. United States*, 445 U.S. 40, 50-51 (1980).

"A concern for protecting confidentiality does not equate to privilege." *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164, 2007 WL 1246216, at *2 (D. Kan. Apr. 27, 2007) (unpublished decision). Further, in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 30 (1984), the Supreme Court observed:

> The [civil discovery] Rules do not differentiate between information that is private or intimate and that to which no privacy interests attach. Under the Rules, the only express limitations are that the information sought is not privileged, and is relevant to the subject matter of the pending action. Thus, the Rules often allow extensive intrusion into the affairs of both litigants and third parties.

As such, even if the information requested by Defendant is confidential, it nevertheless may be within the scope of permissible discovery pursuant to Fed. R. Civ. P. 26(b)(1). *Lobato v. Ford*, No. 05-01437, 2007 WL 3342598, at *4 (D. Colo. Nov. 9, 2007) (unpublished decision) ("the protection for privileged information afforded by Rule 26(b)(1) does not extend to 'confidential' information" (citations omitted)).

It is well established that federal evidentiary privileges may be created by federal procedural rules, federal common law, the Constitution, or by federal statute. *See, e.g., Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) ("The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law."); *Pierce County, Wash. v. Guillen*, 537 U.S. 129, 146-48 (2003) (holding that a federal statute protecting documents from discovery and admission into evidence created an evidentiary

9

privilege). Federal statutory privileges may be created when a statute explicitly protects information or documents from civil discovery or provides for confidentiality. *See Baldridge v. Shapiro*, 455 U.S. 345, 361 (1982) (reasoning that "Congress intended the confidentiality provisions [of a federal statute] to constitute a 'privilege' within the meaning of the Federal Rules[,]" otherwise "[d]isclosure by way of civil discovery would undermine the very purpose of confidentiality contemplated by Congress").

Although state statutes can similarly create state evidentiary privileges, the Court, for the purposes of this action, is only bound by state statutory privileges to the extent that these privileges are also permitted as a matter of federal law. *See Pearson v. Miller*, 211 F.3d 57, 62 (3d Cir. 2000). Even when a state privilege is not permitted as a matter of federal law, the Court should "at least consider [state statutory] 'privileges,' as well as the confidentiality interests otherwise protected" by them. *Id.* at 69. If a state doctrine promoting confidentiality does not conflict with federal interests, it may be taken into account as a matter of comity. *Gottlieb v. Wiles*, 143 F.R.D. 235, 237 (D. Colo. 1992) (citations omitted).

Pursuant to Colorado law, individuals have a right to privacy or confidentially "to prevent discovery of personal materials or information . . . ." *Corbetta v. Albertson's, Inc.*, 975 P.2d 718, 720-21 (Colo. 1999). Colorado courts have adopted a three-part test to determine whether confidential information should be disclosed during discovery. This test requires the court to consider:

> (1) whether the individual has a legitimate expectation of nondisclosure; (2) whether disclosure is nonetheless required to serve a compelling state interest; and (3) where a compelling state interest necessitates disclosure of otherwise protected information, how disclosure may occur in a manner which is least intrusive with respect to the right of confidentiality.

*Martinelli v. Denver Dist. Court*, 612 P.2d 1083, 1091 (Colo. 1980). In a subsequent

decision, the Colorado Supreme Court recognized the "limited applicability of the *Martinelli* test" in those cases where one private party seeks disclosure of confidential information from another private party. *Stone v. State Farm Mut. Auto. Ins. Co.*, 185 P.3d 150, 157 (Colo. 2008). In such cases, the court noted that "[c]onsideration of a compelling *state* interest (i.e. the second prong of *Martinelli*) . . .has little or no applicability. . . ." *Id.* at 158. Accordingly, the *Stone* court affirmed that the test set forth in *Alcon v. Spicer*, 113 P.3d 735 (Colo. 2005), is more appropriately used in cases involving two private parties and the discovery of confidential information. *Stone*, 185 P.3d at 159.

The *Alcon* test, as set forth in *Stone*, requires courts to balance the concepts of "compelling need and least intrusive alternative" and mandates that this inquiry be considered in light of the particular circumstances of each case. *Id.* In applying the *Alcon* test, the *Stone* court noted that "[t]he burden lies with the party seeking discovery to show relevancy and to demonstrate a compelling need for the specific information contained within the requested documents. In responding to the discovery requests, the party opposing discovery can point to other available sources from which the information can be readily obtained." *Id.*

The Court has not identified any case law applicable to a situation such as this one, i.e., where a party seeks confidential discovery *from* the state. Considering the circumstances of the instant discovery request, I find that the *Alcon* test is more appropriately applied, because the second *Martinelli* factor involving state interests appears to be unrelated to the issues in this case. Therefore, pursuant to *Alcon*, the Court must consider whether Defendant has demonstrated a "compelling need" for the documents, and whether production of those documents is the "least intrusive" means of obtaining the

11

information sought. *Id.* at 158.

As noted above, although DOL and SDNH have asserted that the subpoenaed records are confidential, this does not equate to an assertion of privilege. I find that Defendant has a compelling need for the DOL documents in order to defend against the defamation claim. DOL has not suggested a less intrusive means of obtaining the information. Moreover, the Court notes that the disclosed records would be subject to the parties' Stipulated Protective Order [#39].

However, on this record I cannot find that Defendant has demonstrated a "compelling need" for the SDNH records. At least some of the information sought by Defendant (social security numbers) is among the most closely guarded personal information maintained by individuals in the United States. In seeking it, Defendant attempts to obtain proof of the truth of statements apparently made in the Film to the effect that Plaintiff employed illegal immigrants. However, as noted *supra*, the information sought by Defendant from SDNH will not establish the truth of the Film's allegations. In fact, it may not demonstrate anything other than that some of Plaintiff's new hires provided inaccurate social security numbers. Given the highly confidential nature of the information sought, the Court requires a significant showing of Defendant's alleged compelling need to obtain it. Such a showing has not been made here.

Moreover, neither Defendant nor SDNH has addressed whether production of these records is the "least intrusive" means of obtaining the information sought. A simple reading of the pleadings indicates that it probably is not. After all, Defendant produced a Film in which it was somehow alleged that Plaintiff employed illegal immigrants. The source or sources of that allegation were undoubtedly known to Defendant when the Film was made.

Logically, the "least intrusive" means of obtaining the information sought here is to go back to the original sources used in the Film. The record before me is bereft of any indication that this logical assumption is incorrect. Before the Court orders highly confidential information to be produced by a non-party, some showing must be made that other less intrusive, logical sources have been explored unsuccessfully. *See, e.g.*, *Stone,* 185 P.3d at 158-59. No such showing is made here.

As instructed by the decision in *Stone*, in balancing the concepts of compelling need and least intrusive alternative in the particular circumstances of this case, I conclude that the confidential SDNH information should be protected.

**E.     Undue Burden**

DCSE also asserts that Request No. 3 of the subpoena, which seeks documents relating to the communications between Spacecon and SDNH, creates an undue burden because it seeks documents which are not reasonably accessible. *See* Fed. R. Civ. P. 45(d)(1)(D). According to DCSE, "[c]ompliance with this particular request would require ad hoc reporting compiled by a technician already assigned to perform other tasks." *Motion* [#49] at 5. Because I find that the DCSE documents are confidential and should not be disclosed to Defendant under these circumstances, there is no need for the Court to address DCSE's undue burden claim.

### III.     Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Department of Human Services, Division of Child Support Enforcement's Motion to Quash Subpoena [#49] is **GRANTED**.

IT IS FURTHER **ORDERED** that the Colorado Department of Labor and

Employment's Motion to Quash Subpoena or, in the Alternative, Motion for In Camera Review of the Records [#54] is **DENIED**.

IT IS FURTHER **ORDERED** that the Colorado Department of Labor and Employment shall respond to the subpoena **on or before October 15, 2010**.

Compliance with the subpoena and the disclosure of the documents are subject to the provisions of the Stipulated Protective Order [#39].[6]

Dated:  October 1, 2010

BY THE COURT:

 s/ Kristen L.  Mix
Kristen L.  Mix
United States Magistrate Judge

---

[6] Because a Protective Order is in place, the Court finds that an *in camera* review, requested by DOL, is not necessary.